1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9

10  FEDERAL DEPOSIT INSURANCE                CASE NO. C13-1797 MJP
    CORPORATION AS RECEIVER FOR
11  WASHINGTON FIRST                          ORDER ON BANCINSURE'S
    INTERNATIONAL BANK,                       MOTION TO DISMISS OR
12                                            PERMANANENTLY ENJOIN
                        Plaintiff,            CLAIMS AGAINST DEFENDANT
13                                            BANCINSURE
            v.
14
    BANCINSURE, INC.,
15
                        Defendant.
16

17

18          THIS MATTER comes before the Court on Defendant BancInsure's Motion to Dismiss

19  or Permanently Enjoin Claims Against Defendant BancInsure (Dkt. No. 29) and Intervenor-

20  Defendant Washington Insurance Guaranty Association's (WIGA's) Joinder in BancInsure's

21  Motion (Dkt. No. 34). Having reviewed the Motions, the Responses (Dkt. Nos. 36, 45), and the

22  Replies (Dkt. Nos. 46, 52), and all related papers, and having heard oral argument on the motions

23  on July 23, 2015, the Court hereby DENIES the Motion to dismiss or enjoin but STAYS the case

24  and CONSIDERS WIGA's contingent Motion moot.

ORDER ON BANCINSURE'S MOTION TO
DISMISS OR PERMANANENTLY ENJOIN
CLAIMS AGAINST DEFENDANT
BANCINSURE- 1

**Background**

The FDIC, in its capacity as Receiver for the insolvent Washington First International Bank, filed its complaint for declaratory judgment and breach of contract against the then-solvent Defendant BancInsure on October 4, 2013. (Dkt. No. 1.) The case proceeded normally until July 31, 2014, when BancInsure was ordered to show cause by an Oklahoma court why it should not be placed into receivership. (See Dkt. No. 16.)

On August 21, 2014, the Oklahoma court placed BancInsure (now known as Red Rock Insurance Company) into receivership, appointed the insurance commissioner of Oklahoma as Receiver, and issued an order "enjoin[ing] and prohibit[ing] [all persons and entities] from prosecuting any pending litigation involving Red Rock (whether as a plaintiff or defendant) or against its insureds; obtaining any preferences, judgments, attachments, or other liens against Red Rock or its insureds; or making any levy against Red Rock or against its assets or any part thereof." (Dkt. No. 19 at 10.) On BancInsure's motion, this Court then granted a temporary stay for 120 days. (Dkt. No. 20.) WIGA sought to intervene and extend the stay. (Dkt. No. 21.) This Court granted the motion to intervene and extended the stay until February 17, 2015. (Dkt. No. 27.)

Meanwhile, on February 13, 2015, BancInsure obtained from the Oklahoma court a modification of the injunction so that two conflicting cases against it (including one brought by the FDIC) that had already proceeded to summary judgment could be appealed to the Ninth Circuit. (See Dkt. No. 30, Ex. C at 23–24.) The order reiterated that in all other respects "[t]he Liquidation Order, including but not limited to its injunction and prohibition of all persons and entities (including secured creditors, unsecured creditors, claimants and/or litigants) from

ORDER ON BANCINSURE'S MOTION TO
DISMISS OR PERMANANENTLY ENJOIN
CLAIMS AGAINST DEFENDANT
BANCINSURE- 2

1  prosecuting any pending action or litigation involving Red Rock (whether as a plaintiff or

2  defendant) remains in full force and effect." (Id. at 24.)

3      BancInsure now asks this Court to enforce the Oklahoma court's injunction by either

4  dismissing the claims against it or entering its own permanent injunction. (See Dkt. No. 29.)

5  WIGA asks the Court to allow it to "withdraw" as intervenor in the event the Court dismisses the

6  claims against BancInsure. (See Dkt. No. 34.)

7  **Discussion**

8      As the Ninth Circuit has observed, "[f]ederal courts routinely confront the conflict

9  between their exercise of federal jurisdiction and state laws establishing exclusive claims

10  processing for insurance insolvency." Hawthorne Savings F.S.B. v. Reliance Ins. Co. of Illinois,

11  421 F.3d 835, as amended by 433 F.3d 1089 (9th Cir. 2005) (quotation marks and citation

12  omitted). Here, BancInsure is asking a federal district court exercising a form of "arising under"

13  jurisdiction (but applying state substantive law) to defer to a state insolvency proceeding.

14      I.      The Uniform Insurers Liquidation Act

15      BancInsure argues that Washington courts enforce injunctions ordered pursuant to out-of-

16  state insurer liquidation proceedings and urges this Court to follow their lead.

17        A.  Claims with Respect to BancInsure

18      As BancInsure notes, both Washington and Oklahoma have adopted the Uniform Insurers

19  Liquidation Act ("UILA"). See RCW 48.99.010 et seq.; 36 Okla. Stat. § 1921 et seq. The

20  Washington Supreme Court has held that where another state has adopted the UILA, "the courts

21  of Washington should recognize the right of the [out-of-state] liquidator to seek a stay of all

22  proceedings against the defunct insurer." Am. Star Ins. Co. v. Grice, 123 Wn.2d 131, 134 (1994).

23  (There is no reason to think the Washington Supreme Court would draw a distinction between in

24  rem proceedings and other actions or proceedings, as the Ninth Circuit has suggested the UILA

1  statutory language might be understood; Grice was itself a declaratory judgment coverage action

2  like this one. Cf. Hawthorne Savings, 421 F.3d at 852–56.)

3        The Ninth Circuit has instructed that at least in diversity cases where the federal court is

4  applying state substantive law, the outcome of a request to defer to out-of-state insolvency

5  proceedings should be the same in federal court as it would have been in state court. Hawthorne

6  Savings, 421 F.3d at 841. This suit is "deemed" to arise under federal law, but solely because the

7  FDIC is a party. See 28 U.S.C. § 1331; 12 U.S.C. § 1819(b)(2)(A). No one has argued that state

8  substantive law does not otherwise apply (though the FDIC seems to suggest UILA deference is

9  not substantive). See also O'Melveny & Myers v. FDIC, 512 U.S. 79, 86 (1994).

10        Because Washington courts would either dismiss or stay the case against BancInsure

11  pursuant to the UILA, this Court agrees it should do the same. See Grice, 123 Wn.2d at 134;

12  Olivine Corp. v. United Capitol Ins. Co., 122 Wn.App. 374 (1994).

13        The FDIC objects that federal statutes specific to cases where the FDIC is a party are

14  applicable here, and 12 U.S.C. 1821(j) provides that "no court may take any action, except at the

15  request of the Board of Directors by regulation or order, to restrain or affect the exercise of

16  powers or functions of the Corporation as a conservator or a receiver." This anti-injunction

17  provision prevents courts from granting equitable relief against the FDIC. See Sharpe v. FDIC,

18  126 F.3d 1147, 1154 (9th Cir. 1997). Thus, the Oklahoma court's purported injunction was not

19  immediately effective against the FDIC acting in its capacity as receiver. However, the anti-

20  injunction provision cannot prevent this Court from dismissing or staying the case against

21  BancInsure based on the deference accorded by the forum state to another state's insolvency

22  proceeding.

23

24

ORDER ON BANCINSURE'S MOTION TO
DISMISS OR PERMANANENTLY ENJOIN
CLAIMS AGAINST DEFENDANT
BANCINSURE- 4

B.  Claims Against WIGA Standing in BancInsure's Shoes

Although Washington law is clear with respect to claims against BancInsure directly, the status of the intervenor WIGA, which stands in BancInsure's shoes to the extent of its statutory liability, is more ambiguous. (See also WIGA Mot. Intervene, Dkt. No. 21 at 2–3.) WIGA argues it should be allowed to "withdraw" as intervenor if BancInsure is dismissed. (Dkt. No. 34.) The Court notes that intervenors under Fed.R.Civ.P. 24(a)(2), the provision through which WIGA sought intervention (see Dkt. No. 21 at 3–4), "enter the suit with the status of original parties and are fully bound by all future court orders." United States v. State of Oregon, 657 F.2d 1009, 1014 (9th Cir. 1981) (citations omitted). "By successfully intervening, a party makes himself vulnerable to complete adjudication by the federal court of the issues in litigation between the interven[o]r and the adverse party." Id. (quotation marks and citation omitted). As a successful intervenor-defendant, therefore, WIGA must be treated as an original defendant, and cannot simply "withdraw" but must request that the claims relating to its interests be dismissed.

The Oklahoma order enjoining litigation against BancInsure did not specifically address litigation involving state guaranty organizations such as WIGA, and the FDIC points out that Oklahoma statutory provisions adjacent to the Oklahoma UILA appears to condone continued litigation against guaranty associations outside the state insolvency proceeding. See 36 Okla. Stat. § 1902(D) & (E). Furthermore, in the Washington case which established the effect of injunctions in reciprocal states, WIGA and another party agreed that the status of the insolvent insurer "should not prevent an action against WIGA." See Grice, 123 Wn.2d at 137–38.

WIGA also urges the court to allow its withdrawal (i.e., dismiss it from the lawsuit) because of the risk of inconsistent results. (Dkt. No. 34 at 4.) It would appear that allowing the FDIC to proceed against WIGA here to the extent of its liability carries the risk of inconsistent

1  results because the Oklahoma court would decide coverage issues between the FDIC and

2  BancInsure while the FDIC's claims against WIGA depend in part on whether there exist

3  "covered claims" under BancInsure policy. See RCW 48.32.060(1)(b). Even so, Oklahoma law

4  appears to require the insolvency court to defer to this Court's determinations about WIGA's

5  liability, if any. 36 Okla. Stat. § 1902(E) ("The determination of any dispute with respect to the

6  statutory obligations of any guaranty association by a court or administrative agency or body

7  with jurisdiction in the state of domicile of the guaranty association shall be binding and

8  conclusive as to the parties in a delinquency proceeding initiated in the district court, including,

9  without limitation, the policyholders of the insurer.").

10        There is no clear law compelling WIGA's dismissal from the case. However, WIGA in

11  its Reply requests in the alternative a stay of proceedings rather than dismissal. (Dkt. No. 52 at

12  8.) These options are considered below.

13        II.       Jurisdiction, Abstention, and Stay of Proceedings

14        The state-law result compelled by Grice with respect to BancInsure does not indicate that

15  state courts have any direct power to enjoin federal in-personam proceedings; they do not. See

16  Hawthorne Savings, 421 F.3d at 850–51 (citing, inter alia, Donovan v. City of Dallas, 377 U.S.

17  408, 412–13 (1964)).

18        Nor does the result suggest that the source of federal jurisdiction in this case is reverse

19  preempted by the McCarran-Ferguson Act. In a similar case under diversity jurisdiction, the

20  Ninth Circuit held that the McCarran-Ferguson Act does not work in conjunction with the UILA

21  to reverse preempt 28 U.S.C. § 1332, the source of federal jurisdiction in that case. Hawthorne

22  Savings, 421 F.3d at 842–43. The case for reverse preemption is even weaker in the arising-

23  under context; the Court agrees with the FDIC that the Court is not deprived of jurisdiction here.

24

ORDER ON BANCINSURE'S MOTION TO
DISMISS OR PERMANANENTLY ENJOIN
CLAIMS AGAINST DEFENDANT
BANCINSURE- 6

1    The abstention doctrines raised by BancInsure and WIGA are also unavailing. Abstention

2    from the exercise of federal jurisdiction is "an extraordinary and narrow exception to the duty of

3    a District Court to adjudicate a controversy properly before it." Colorado River Water

4    Conservation Dist. v. United States, 424 US. 800, 813 (1976) (quoting County of Allegheny v.

5    Frank Mashuda Co., 360 U.S. 185, 188 (1959)).

6    Generally, as the FDIC points out, the abstention doctrine used when federal courts

7    encounter state insolvency "injunctions" is Burford abstention. However, the Ninth Circuit has

8    distinguished Burford from cases such as this one, "where the application of one state's

9    substantive law [is] argued to interfere with another state's regulatory policy" rather than the first

10    state's own regulatory policy. Hawthorne Savings, 421 F.3d at 845. Dismissal of this case would

11    result in an Oklahoma court deciding issues of Washington coverage law, so there is no reason to

12    expect special competence beyond that supplied by a federal court that regularly applies

13    Washington law in diversity cases. The principles animating Burford abstention are not relevant

14    here. Furthermore, the Supreme Court has held that Burford abstention leading to dismissal (as

15    BancInsure requests) rather than a stay is not available in actions at law, and here the FDIC is

16    seeking damages for breach of contract as well as a declaratory judgment. (Dkt. No. 1 at 15.) See

17    Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 731 (1996).

18    WIGA also urges the Court to abstain based on Colorado River abstention (and Wilton-

19    Brillhart for the declaratory judgment claims). (Dkt. No. 34 at 3–4.) The Court is not persuaded

20    that any of the Colorado River factors weigh strongly in favor of abstention and agrees with the

21    FDIC that "exceptional circumstances" are not present here. Furthermore, the Colorado River

22    doctrine does not apply in the absence of parallel state court proceedings. Kirkbride v. Cont'l

23    Cas. Co., 933 F.2d 729, 734 (9th Cir.1991). Ninth Circuit cases have held that state receivership

24

ORDER ON BANCINSURE'S MOTION TO
DISMISS OR PERMANANENTLY ENJOIN
CLAIMS AGAINST DEFENDANT
BANCINSURE- 7

1  proceedings are not parallel to substantive disputes against the insolvent entity for the purpose of

2  Colorado River abstention. Tucker v. First Maryland Sav. & Loan, Inc., 942 F.2d 1401, 1408

3  (9th Cir. 1991).

4         Even absent grounds for abstention, however, a federal district court has broad discretion

5  in deciding whether to issue a stay under Landis v. North American Co., 299 U.S. 248, 254

6  (1936). See Lockyer v. Mirant Corp., 398 F.3d 1098, 1110 (9th Cir. 2005). "A trial court may,

7  with propriety, find it is efficient for its own docket and the fairest course for the parties to enter

8  a stay of an action before it, pending resolution of independent proceedings which bear upon the

9  case." Leyva v. Certified Grocers of Cal., Ltd., 593 F.2d 857, 863 (9th Cir. 1979). "Where it is

10 proposed that a pending proceeding be stayed, the competing interests which will be affected by

11 the granting or refusal to grant a stay must be weighed." CMAX, Inc. v. Hall, 300 F.2d 265, 268

12 (9th Cir.1962). Those competing interests are "the possible damage which may result from the

13 granting of a stay, the hardship or inequity which a party may suffer in being required to go

14 forward, and the orderly course of justice." Lockyer, 398 F.3d at 1110 (internal citations

15 omitted).  The orderly course of justice is "measured in terms of simplifying or complicating of

16 issues, proof, and questions of law which could be expected to result from a stay." Id.

17 Here, a stay affords the BancInsure Receiver an opportunity to request (as it did in two other

18 actions) that the Oklahoma court lift the injunction with respect to these coverage issues, whether

19 defended by WIGA or BancInsure, so that it is clear in which forum the issues will be resolved.

20 Alternatively, the stay could allow the Oklahoma court to resolve the issues against BancInsure,

21 at which point this Court could proceed to analyze the extent to which WIGA remains liable.

22        A stay of the action against both BancInsure and WIGA appears to conform to the

23 Washington Supreme Court's holding in Grice requiring either dismissal or stay in response to

24

ORDER ON BANCINSURE'S MOTION TO
DISMISS OR PERMANANENTLY ENJOIN
CLAIMS AGAINST DEFENDANT
BANCINSURE- 8

1  insolvency injunctions in reciprocal states. It also mirrors recent district court decisions in the 9th

2  Circuit with respect to this same insolvency proceeding. See, e.g., Idaho Trust Bank v.

3  BancInsure, Inc., No. 1:12-cv-00032-REB, 2014 WL 4064063, *6 (D. Idaho Aug. 15, 2014).

4  And it allows this Court to retain jurisdiction over WIGA, a creature of Washington law

5  conceived to protect Washington policyholders, which may not be subject to the jurisdiction of

6  the Oklahoma court. See 36 Okla. Stat. § 1902(D).

7  **Conclusion**

8        The Court DENIES BancInsure's Motion to dismiss or enjoin but STAYS the case. The

9  Parties are further ORDERED to provide a Joint Status Report six (6) months from this Order

10  and every six months thereafter. The Court CONSIDERS WIGA's Motion moot because it was

11  premised on a contingent event, dismissal, which did not occur.

12

13

14        The clerk is ordered to provide copies of this order to all counsel.

15        Dated this 24th day of July, 2015.

16

17

18                                          Marsha J. Pechman

19                                          Chief United States District Judge

20

21

22

23

24

ORDER ON BANCINSURE'S MOTION TO
DISMISS OR PERMANANENTLY ENJOIN
CLAIMS AGAINST DEFENDANT
BANCINSURE- 9